### ELECTIONS — FAIR ELECTION PRACTICES ACT — CONSTITUTIONAL LAW — FREEDOM OF SPEECH — POLITICAL SPEECH — EFFECT OF *McINTYRE v. OHIO ELECTIONS COMM'N* ON MARYLAND'S "AUTHORITY LINE" REQUIREMENTS

May 16, 1995

*Stephen Montanarelli, Esquire*
*State Prosecutor*

You have requested our opinion whether Maryland's statutory prohibitions on anonymous campaign material remain enforceable in light of the Supreme Court's recent decision in *McIntyre v. Ohio Elections Comm'n,* 115 S.Ct. 1511 (1995).

For the reasons stated below, we conclude that the two provisions — Article 33, §§26-9.2(b) and 26-17(a) — are unconstitutional and may not be enforced against individuals who independently produce campaign material. These provisions may continue to be enforced against candidates and treasurers, political committees and other entities, and individuals who produce material in coordination with them.

## I

### The Maryland Statutes

As part of a major reform in Maryland's Fair Election Practices Act in 1991, the General Assembly expressly recognized the right of individuals to engage in political speech without the reporting and other mandates applicable to candidates and political committees: "Provided that a person complies with the requirements set forth in subsection (b) of this section, this subtitle may not be construed to prohibit a person from expressing personal views on any subject or from spending personal funds to purchase any campaign

advertisement or campaign material." Article 33, §26-9.2(a).[1] The "requirements set forth in subsection (b)" are these:

> In any campaign advertisement or campaign material purchased by an independent expenditure or an expenditure that has not been authorized a candidate, the following language shall be included:
>
> "This message has been authorized and paid for by (name of committee or any affiliated organization of the committee), (name and title of treasurer or president). This message has not been authorized or approved by any candidate."

This disclosure requirement for independently produced campaign material augments the State's long-standing "authority line" requirement, set forth in Article 33, §26-17:

> (1) (i) Except as provided in subparagraphs (ii) and (iii) of this paragraph, each item of campaign material shall contain, set a part from any other printing on it, an authority line containing the name and address of the person, candidate, treasurer, chairman, or campaign manager responsible for the campaign material. The material shall also include, if applicable, the name of the candidate or committee responsible for the campaign material.
>
> (ii) If the address required under subparagraph (i) of this paragraph is on file with the appropriate board or the State Administrative Board of Election Laws, the campaign material need not contain the address.

---

[1] The First Amendment guarantees an individual the right to make unlimited independent expenditures in a political campaign. *See Buckley v. Valeo*, 424 U.S. 1, 47 (1976).

> (iii) If the campaign material is too small to permit the inclusion of all required information in a legible manner, the material need only contain the name of the person, candidate, treasurer, chairman, or campaign manager responsible for the material.
>
> (2) Each campaign advertisement shall contain, set apart from the message, the information required under paragraph (1)(i) and (ii) of this subsection, except that the name of more than one responsible individual or entity may not be required.

A prohibition on anonymous campaign literature has been part of Maryland's election laws for 75 years. *See* Chapter 697, Laws of Maryland 1920.

## II

### The *McIntyre* Case

Ohio has a requirement very similar to Article 33, §26-17(a). Under Ohio Rev. Code Ann. §3599.09(A), anyone who distributes political matter must include in the material "the name and residence or business address of the chairman, treasurer, or secretary of the organization issuing the same, or the person who issues, makes, or is responsible therefor."

In 1988, Margaret McIntyre distributed leaflets to people attending a public meeting at a school in a small Ohio town. The meeting concerned a proposed school tax levy, and the leaflets expressed Mrs. McIntyre's opposition to the levy. Some of the leaflets failed to comply with the Ohio disclosure requirements; the leaflets merely said that they expressed the views of "concerned parents and taxpayers." As the Supreme Court summarized the facts, "except for the help provided by son and a friend, who placed some of the leaflets on car windshields in the school parking lot, Mrs. McIntyre acted independently." 115 S.Ct. at 1514.

Mrs. McIntyre was later charged with violating §3599.09(A) of the Ohio Code by distributing the unsigned leaflets. She was fined $100. *Id.*

Mrs. McIntyre then initiated a First Amendment challenge to the Ohio disclosure statute. She prevailed in the trial court, which held "that the statute was unconstitutional as applied to her conduct." *Id.* She then lost the state court appeal brought by Ohio election officials; the Ohio Court of Appeals and Ohio Supreme Court rejected her First Amendment argument and reinstated the fine. 115 S.Ct. at 1515. Mrs. McIntyre having died during the course of the litigation, the executor of her estate brought the case to the Supreme Court. The question presented for review attacked the Ohio statute both on its face and as applied to Mrs. McIntyre. *See* 115 S.Ct. at 1516.

Writing for a six-justice majority, Justice Stevens held that Mrs. McIntyre's anonymous leaflets were protected by the First Amendment. The Court identified "a respected tradition of anonymity in the advocacy of political causes." 115 S.Ct. at 1517. The Court wrote: "[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *Id*.

The Court then rejected Ohio's argument that its interest "in preventing fraudulent and libelous statements" outweighed the First Amendment right at issue.[2] 115 S.Ct. at 1519. The Court recognized that Ohio's interest in preventing fraud and libel "carries special weight during election campaigns when false statements, if credited, may have serious adverse consequences for the public at large." *Id.* The Court found a poor fit, however, between these state

---

[2] Ohio also argued that "its interest in providing the electorate with relevant information was sufficiently compelling to justify the anonymous speech banned." 115 S.Ct. at 1519. The Court summarily dismissed this argument: "The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer makes statements or disclosures she would otherwise omit." *Id.*

interests and the disclosure requirement, because Ohio's election code "includes detailed and specific prohibitions against making or disseminating false statements during political campaigns." *Id.*[3] The Court then characterized a prohibition of anonymous political leaflets "as an aid to enforcement of the specific prohibitions and as a deterrent to the making of false statements by unscrouplous prevaricators.   Although the ancillary benefits are assuredly legitimate, we are not persuaded that they justify §3599.09(A)'s extremely broad prohibition."  115 S.Ct. at 1521.

The Court summarized the flaws of the Ohio prohibition as follows:

> As this case demonstrates, the prohibition encompasses documents that are not even arguably false or misleading.  It applies not only to the activities of the candidates and their organized supporters, but also to individuals acting independently and using only their own modest resources.  It applies not only to elections of public officers, but also to ballot issues that present neither a substantial risk of libel nor any potential appearance of corrupt advantage.  It applies not only to leaflets distributed on the eve of an election, when the opportunity for reply is limited, but also to those distributed months in advance.

*Id*.  In short, the Court concluded, "Ohio has not shown that its interest in preventing the misuse of anonymous election-related

---

[3] For example, Ohio prohibits the making of a false statement "that a candidate or official has a record of treatment or confinement for mental disorder" or "concerning the voting record of a candidate or public official."   Ohio Rev. Code Ann. §3599.09.2(B)(6) and (9).   While disclaiming any assessment of these provisions' constitutionality, the Supreme Court pointed to them as evidence "that Ohio has addressed directly the problem of election fraud." 115 S.Ct. at 1520.  Maryland has no comparable prohibitions against false representation in political advertising, except for a prohibition of certain false statements concerning ballot questions.  Article 33, §§23-4 and 23-5.

speech justifies a prohibition of all uses of that speech." 115 S.Ct. at 1524.

## III

### Scope of the Supreme Court's Decision

Despite some passages that might suggest otherwise, the Supreme Court's decision did not invalidate the Ohio law on its face and thereby prevent its enforcement under any circumstances. Rather, as we read the decision, it struck down the application of that law to Mrs. McIntyre and those who engage in comparable political activity.

In a footnote, Justice Stevens wrote that the Court's opinion "discusses only written communications, and, particularly, leaflets of the kind Mrs. McIntyre distributed." 115 S.Ct. at 1515. Another passage spoke of Ohio's "scant cause for inhibiting the leafletting at issue here." 115 S.Ct. at 1522. Yet another passage refers to the type of election-related document at issue as "a personally crafted statement of a political viewpoint." 115 S.Ct. at 1522.

To be sure, other passages in the majority opinion could be read to broaden the scope of the Court's holding. For example, Justice Stevens wrote that the Court "must ... decide whether and to what extent the First Amendment's protection of anonymity encompasses documents intended to influence the electoral process." 115 S.Ct. at 1517-18. In distinguishing two prior cases, the Court pointed out that "[n]either case involved a prohibition of anonymous campaign literature." 115 S.Ct. 1522. Moreover, Justice Thomas, who concurred separately, wrote of his agreement "with the majority's conclusion that Ohio's election law ... is inconsistent with the First Amendment." And Justice Scalia, in his dissent, scored the majority for creating an amorphous "right-to-be-unknown while engaging in electoral politics." 115 S.Ct. at 1531.

In our view, the better interpretation of the Court's decision is that it does not invalidate prohibitions on anonymous campaign material as they may be applied to anyone other than an individual acting independently. As Justice Ginsberg wrote in her concurrence:

> The Court's decision finds unnecessary, overintrusive, and inconsistent with American ideals the state's imposition of a fine on an individual leafleteer who, within her local community, spoke her mind, but sometimes not her name. We do not thereby hold that the State may not, in other, larger circumstances, require the speaker to disclose its interest by disclosing its identity.

115 S.Ct. at 1524. Her choice of pronoun in the last quoted phrase – "its" – seems significant. Justice Ginsburg, at least, implies that political advocacy by *entities* can be made subject to a disclosure requirement, even though independent advocacy by *individuals* cannot. Justice Ginsburg also characterized the Court as "leaving open matters not presented by McIntyre's handbills .... *Id.*

Justice Ginsburg's view of the case reflects the Court's customary reluctance to invalidate laws for overbreadth when a more selective remedy for the constitutional violation is possible. A law is void on its face "only when (1) the protected activity is a significant part of the law's target and (2) there exists no satisfactory way of severing the law's constitutional from its unconstitutional applications so as to excise the latter cleanly in a single step from the law's reach." Laurence H. Tribe, *American Constitutional Law* §12-27, at 1022 (2d ed. 1988).

As the quoted excerpts from the Court's opinion and Justice Ginsburg's concurrence evidence, there *is* a satisfactory way to sever constitutional from unconstitutional applications of Maryland's authority line requirements. Given a choice between a broad interpretation of *McIntyre*, which would invalidate all of Maryland's efforts to hold political advocates accountable to the electorate for their statements, and a narrow interpretation, which would invalidate these laws only when applied to individuals acting on their own, of course we opt for the latter.

# IV

## Conclusion

In summary, it is our opinion that Article 33, §§26-9.2(b) and 26-17(a) remain enforceable, except as applied to individuals who, like Mrs. McIntyre, prepare materials in political campaigns on their own, without coordination with others.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

*Editor's Note:*

The two provisions of the Election Code discussed in this opinion have been recodified within Article 33, Former §26-9.2(b) is now §13-504. Former §26-17 is now §13-501.